# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CURTIS ANDERSON,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>Defendants. | Case No. 1:16-cv-00352-DAD-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSAL OF CERTAIN CLAIMS AND DEFENDANTS<br><br>[ECF Nos. 10, 12] |

Plaintiff is a federal prisoner proceeding pro se and in forma pauperis pursuant to <u>Bivens v. Six Unknown Named Agents</u>, 403 U.S. 388 (1971), and the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671. Plaintiff has consented to magistrate judge jurisdiction on April 4, 2016. (ECF No. 5.) To date, Defendants have not consented or declined to United States Magistrate Judge jurisdiction.

On May 9, 2017, the Court screened Plaintiff's first amended complaint pursuant to 28 U.S.C. § 1915A and 28 U.S.C. § 1915(e)(2)(B), and found that it stated a cognizable claim for the violation of the Federal Tort Claims Act against the United States of America, and for medical malpractice under state law against Dr. Hellner, Dr. Franco, P.A. Hong, P.A. Egan, Nurse Jane Doe #1, Nurse Jane Doe #2, and Mercy Medical Center. (ECF No. 10.) Following Plaintiff's notification of intent to proceed only on the claims found to be cognizable, (ECF No. 11), on July 19, 2017, the Court dismissed all other claims for the failure to state a cognizable claim for relief, (ECF No. 12). The Court indicated that jurisdiction existed under 28 U.S.C. §

1

636(c) based on the fact that Plaintiff had consented to Magistrate Judge jurisdiction and no other parties had yet appeared. (See id. at 1.)

On November 9, 2017, the Ninth Circuit Court of Appeals ruled that 28 U.S.C. § 636(c)(1) requires the consent of all named plaintiffs and defendants, even those not served with process, before jurisdiction may vest in a Magistrate Judge to dispose of a civil case. Williams v. King, 875 F.3d 500 (9th Cir. 2017). Accordingly, the Court did not have jurisdiction to dismiss the claims described in its July 19, 2017 order.

Based upon the foregoing, the undersigned will now recommend to the District Judge that this case continue to proceed only on Plaintiff's cognizable claims, and that the claims described below be dismissed, for the reasons explained herein.[1]

///

///

///

///

---

[1] On October 23, 2017, Defendant Hellner filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and California Code of Civil Procedure § 425.13. (ECF No. 22.) Concurrently with that motion, Defendant Hellner filed a motion to strike the dollar amount of damages in the amended complaint, pursuant to Rule 12(f) and California Code of Civil Procedure § 425.10. On November 7, 2017, the United States of America moved to dismiss any claims against it for lack of jurisdiction under the independent contractor exception to the Federal Tort Claims Act, 28 U.S.C. § 2671. (ECF No. 26.) Finally, on November 17, 2017, Mercy Medical Center filed a motion to dismiss pursuant to Rule 12(b)(6) on its behalf and on behalf of its purported employees, Nurse Jane Doe # 1 and #2. (ECF No. 30.) These motions were not yet fully briefed at the time of these findings and recommendations.

As discussed herein, these findings and recommendations are based upon a screening of the allegations in the first amended complaint pursuant to 28 U.S.C. § 1915A(a) and 28 U.S.C. § 1915(e)(2)(B), at the time it was filed. The Court makes no findings on the merits of the arguments, defenses, or affirmative defenses raised in the pending motions to dismiss or motion to strike. Instead, separate findings and recommendations will issue on those motions in due course.

2

# I.

# SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fail to state a claim on which relief may be granted," or that "seek monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Moreover, Plaintiff must demonstrate that each defendant personally participated in the deprivation of Plaintiff's rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

# II.

# COMPLAINT ALLEGATIONS

Plaintiff is an inmate in the custody of the U.S. Bureau of Prisons ("BOP"), and is currently housed at the U.S. Penitentiary at Florence, Colorado. Plaintiff names the following

defendants in this action: (1) United States of America; (2) Mark T. Hellner, M.D., an orthopedic surgeon; (3) Mercy Medical Center; (4) Dr. Jon F. Franco, M.D., a medical doctor; (5) P.A. Hong, a physician's assistant; (6) P.A. Egan, a physician's assistant; (7) Nurse Jane Doe #1; and (8) Nurse Jane Doe #2. Plaintiff alleges that Mercy Medical Center and the individual defendants were acting under color of law, as they were contracted with the BOP to provide medical care. Plaintiff also asserts that he sues certain defendants in their official capacities.

Plaintiff alleges as follows: In April of 2013, Plaintiff went to sick call for an injury to his left hand, "fifth finger." (Am. Compl., ECF No. 9, p. 3.) Plaintiff was seen by PA Hong, who assessed the injury and ordered an x-ray. A few days after the x-ray, Plaintiff was called back to medical and told by J. Franco, M.D., that his finger was broken and orthopedic surgery was necessary.

Dr. Hellner, a private doctor contracted with the BOP, arrived at USP Atwater to assess Plaintiff's finger for surgery. After examining the injured hand and x-rays, Dr. Hellner informed Plaintiff that surgery was necessary. Plaintiff asked if there was an alternative to surgery, and was told by Dr. Hellner that if surgery was not performed, he would experience severe arthritic pain for the remainder of his life. Plaintiff elected to have the surgery.

On May 10, 2013, Plaintiff was escorted to Mercy Medical Center in Merced for surgery. Dr. Hellner explained to Plaintiff that he would surgically implant a permanent metal anchor into the bone. Plaintiff asked if he would have full range of motion after the surgery. Dr. Hellner told Plaintiff that he would. While preparing Plaintiff for surgery, Nurse #1 and Nurse #2 assured Plaintiff that it was a simple procedure and that everything would be okay.

Dr. Hellner and his surgical team performed the surgery. During the surgery, Dr. Hellner and the two nurses allowed the presence of a foreign body, which has no therapeutic or diagnostic purpose or effect, in Plaintiff's person. This caused injury to Plaintiff in the form of undue pain and suffering, disfigurement, and permanent damage to his left/fifth finger.

Plaintiff was returned to the prison the same day. Plaintiff was prescribed Tylenol-3, twice a day for three days, for pain. After the three days prescription for pain meds expired, Plaintiff complained of continued pain associated with the surgery to PA Hong, and requested

4

pain medication. PA Hong consulted with Dr. Franco about pain medication. Dr. Franco refused to prescribe any pain medication, even after Plaintiff complained that the pain prevented him from sleeping.

Approximately ten days later, Plaintiff was seen by a nurse at the prison for removal of his sutures. Plaintiff asked the nurse if it was normal for his finger to still be inflamed so long after surgery. The nurse responded no, and told Plaintiff to express his concerns to Dr. Hellner on his next follow-up. A month passed without any post-operative follow-up treatment or rehabilitative therapy instructions from Dr. Hellner.

In late June 2013, Plaintiff approached an x-ray technician, Ms. Silva, and asked when Dr. Hellner would be visiting the prison, because he had not been given any rehabilitative therapy instructions. Plaintiff also explained to Ms. Silva that he had pain and stiffness, and a "lack of motion from the joint." (Id. at 5.) Ms. Silva told Plaintiff that Dr. Hellner's scheduled visit was cancelled due to family concerns, and he had yet to reschedule. This extended delay in post-op medical attention resulted in Plaintiff's disfigurement and permanent damages to his finger.

Plaintiff immediately went to the medical clinic after speaking with Ms. Silva. P.A. Hong contacted Dr. Hellner and informed him of Plaintiff's symptoms, concerns, and to find out what physical therapy could be done. No instructions or additional treatment were given to Plaintiff.

In August of 2013, Dr. Hellner visited the prison for a post-op examination of Plaintiff's finger. Plaintiff's finger was x-rayed, and reviewed by Dr. Hellner. Dr. Hellner told Plaintiff that the surgery was a success. Plaintiff explained that he continued to suffer from pain, inflammation, and he was unable to bend his finger. Dr. Hellner provided no further treatment.

In November of 2013, Plaintiff noticed an open wound forming over the nail bed of Plaintiff's left fifth finger, with a .75 cm string protruding from the open wound. Plaintiff showed the wound to Nurse Spears, who told Plaintiff to cover the wound and come in to medical the next morning.

Plaintiff was seen the next morning by PA Hong, who "attempted to cure the issue of the protruding string by simply cutting it with scissors." (Id. p. 6.) Plaintiff refused to allow

5

Defendant Hong to cut the string until he found out what it was. Defendant Hong said that he would contact Dr. Hellner.

Over the next eight months, Plaintiff appeared for numerous medical visits for his pain, inflammation, and infections. Plaintiff "accosted" several prison administrators, showing them his infected finger that was draining pus and blood. (Id.)

In June 2014, Plaintiff went to the medical clinic for wound care and dressings. Nurse Egan informed Plaintiff that he would have to purchase his wound care supplies from the prison's commissary from this point forward. The same day, Plaintiff approached Associate Warden Snyder and explained his ongoing medical issues and the most recent refusal of medical supplies. Associate Warden Snyder took Plaintiff to Ms. Rodriguez, employed as executive staff. Ms. Rodriguez spoke with medical personnel. Upon her return, Ms. Rodriguez told Plaintiff to go to medical anytime he needs wound care supplies. Medical services complied with Plaintiff's wound care supplies request for a few weeks, then refused to issue wound care supplies.

On June 19, 2014, Plaintiff was approved for an orthopedic consultation. On August 25, 2014, Plaintiff was escorted to the consultation at the offices of Dr. Vanek. Dr. Vanek assessed Plaintiff's finger and x-rays, and determined that surgery was required to remove the foreign body, and the infection in the bone and surrounding tissue. Dr. Vanek told Plaintiff that the infection was caused by the foreign object left in Plaintiff's finger during the May 10, 2013, surgery. Dr. Vanek prescribed Amoxcicillin (antibiotics) for Plaintiff to prepare his body for surgery.

Dr. Franco, Plaintiff's care provider, discontinued the prescription, which caused the infection to return, inflicting more pain on Plaintiff. Later, on January 14, 2015, Dr. Vanek performed the surgery.

Plaintiff asserts a claim under the Federal Tort Claim Act, 28 U.S.C. § 2671, a claim for "medical malpractice" and deliberate indifference in violation of the Eighth Amendment, and a state law claim under California Code of Civil Procedure § 340.5.

///

///

# III.

# DISCUSSION

## A.  Eighth Amendment

"Actions under § 1983 and those under Bivens are identical save for the replacement of a state actor under §1983 by a federal actor under Bivens." Van Strum v. Lawn, 940 F.2d 406, 409 (9th Cir. 1991). While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical care, the Eighth Amendment is only violated when a prison official acts with deliberate indifference to an inmate's serious medical needs. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).

Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Id. The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. Snow, 681 F.3d at 985 (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122.

Where a prisoner alleges deliberate indifference based on a delay in medical treatment, the prisoner must show that the delay led to further injury. See Hallett v. Morgan, 296 F.3d 732, 745-46 (9th Cir. 2002); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 408 (9th Cir. 1985) (per curiam).

The Court notes that Plaintiff claims "medical malpractice in violation of Eighth Amendment's protection from cruel and unusual punishment/California Code of Civil Proc. § 340.5." (ECF No. 9, p. 3.) As Plaintiff has been previously advised, "medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle v. Gamble, 429 U.S. 97, 106 (1977); Snow, 681 F.3d at 987-88; Wilhelm, 680 F.3d at 1122.

Accordingly, Plaintiff's allegations of medical malpractice are insufficient, standing alone, to state a claim for an Eighth Amendment violation.

### 1. Dr. Hellner, PA Hong, PA Egan, Doe Defendants

Plaintiff claimed in his original complaint that Dr. Hellner, PA Hong, PA Egan, and Nurses Jane Doe #1 and #2 violated his Eighth Amendment rights due to "medical malpractice" and deliberate indifference to his serious medical needs. The Court informed Plaintiff of the above standards and described the deficiencies in his allegations.

In the current amended complaint, Plaintiff's factual allegations are substantively the same with respect to Pa Hong, PA Egan and Nurse Jane Doe #1 and #2. Therefore, as Plaintiff has not cured any deficiencies with respect to those claims, he still fails to state any claim for a violation of the Eighth Amendment against those defendants.

With respect to Dr. Hellner, Plaintiff alleges that Dr. Hellner performed a surgery on Plaintiff's finger, and allowed in a foreign body (a string) which caused pain, suffering, disfigurement, and permanent damage. Dr. Hellner later prescribed pain medication. P.A. Hong also spoke with Dr. Hellner and informed him of Plaintiff's symptoms and requests for rehabilitative therapy instructions. Plaintiff did not get any instructions. Dr. Hellner then later saw Plaintiff for a follow-up in August of 2013, at which Dr. Hellner incorrectly told Plaintiff that the surgery was a success.

These allegations are insufficient to state a claim for an Eighth Amendment violation against Dr. Hellner. Even if Dr. Hellner, after viewing the x-ray, should have discovered that there was a foreign body or string left in Plaintiff's finger and was causing an infection, this does not subject Dr. Hellner to liability for deliberate indifference. An Eighth Amendment claim may not be premised on even gross negligence by a physician. Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990).

### 2. Mercy Medical Center

Plaintiff also names Mercy Medical Center as a defendant. As Plaintiff has previously been informed, if his claim is that a hospital employee did something wrong, he should name the individual employee as a defendant rather than the hospital. "Liability under section 1983 arises

only upon a showing of personal participation by the defendant. A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under section 1983." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (citations omitted). Thus, Plaintiff does not state a claim for a violation of the Eighth Amendment against Mercy Medical Center.

### 3. Dr. Franco

Plaintiff alleges that after his prescription for Tylenol-3 ran out, Dr. Franco refused to prescribe any further pain medication to Plaintiff. Later, when Dr. Vanek prescribed Amoxcicillin (antibiotics) for Plaintiff's surgery, Dr. Franco discontinued the prescription, which caused Plaintiff's painful infection to return.

As currently alleged, Plaintiff has only shown a difference in opinion between him and Dr. Franco regarding his treatments. A mere difference of opinion regarding appropriate treatment and pain medication is insufficient to give rise to a constitutional claim. See Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004). Rather, to prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment "was medically unacceptable under the circumstances," and was chosen "in conscious disregard of an excessive risk to [the prisoner's] health." Id. (citation omitted). Thus, Plaintiff has failed to state a claim for a violation of the Eighth Amendment against Dr. Franco.

### B. Federal Tort Claims Act

Plaintiff claims that his health care providers breached the standard of care due to him. Plaintiff specifically alleges excessive delays and refusals in providing adequate medical care for a serious medical need, while they were employed by the BOP. "The FTCA is a limited waiver of sovereign immunity, authorizing suit against the United States for tortious performance of governmental functions in limited cases," Bibeau v. Pacific Northwest Research Found., Inc., 339 F.3d 942, 945 (9th Cir. 2003), and the waiver "is strictly construed in favor of the sovereign . . .," FDIC v. Craft, 157 F.3d 697, 707 (9th Cir. 1998).

///

1  Plaintiff names the United States as a defendant. "The United States is the only proper defendant in a [Federal Tort Claims Act] action." Lance v. United States, 70 F.3d 1093, 1095 (9th Cir. 1995) (citing Woods v. United States, 720 F.2d 1451, 1452 n. 1 (9th Cir. 1983)).

In addition, a suit may not be instituted against the United States under the FTCA unless the claim is first presented to the appropriate federal agency and one of the following conditions is met: the claim is finally denied, or six months have passed without a final resolution having been made. 28 U.S.C. § 2675(a). The claim presentation requirement is a jurisdictional prerequisite to bringing suit and must be affirmatively alleged in the complaint. Gillespie, 929 F.2d at 640.

Here, Plaintiff alleges that he filed an Administrative Tort Claim to the Western Regional Director of the U.S. Bureau of Prisons (Tort claim No. TRT-WXR-2015-02335, filed February 19, 2015). Plaintiff therefore states a claim for relief against the United States on his FTCA claim.

### C. Medical Malpractice in Violation of State Law

Plaintiff alleges a claim for medical malpractice under California law against Dr. Hellner, Dr. Franco, P.A. Hong, P.A. Egan, Nurse Jane Doe #1, Nurse Jane Doe #2, and Mercy Medical Center. "The elements of a cause of action for medical malpractice are: (1) a duty to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise; (2) a breach of the duty; (3) a proximate causal connection between the negligent conduct and the injury; and (4) resulting loss or damage." Johnson v. Superior Court, 49 Cal. Rptr. 3d 52, 58 (3d Dist. 2006).

Under California law, "[a] hospital is liable for a physician's malpractice when the physician is actually employed by or is the ostensible agent of the hospital." Whitlow v. Rideout Mem'l Hosp., 237 Cal. App. 4th 631, 635, 188 Cal. Rptr. 3d 246, 248–49 (3d Dist. 2015) (quoting Jacoves v. United Merchandising Corp., 9 Cal.App.4th 88, 103, 11 Cal. Rptr. 2d 468 (2d Dist. 1992)). In other words, a hospital may be liable under the doctrine of respondeat superior for the negligence of a medical care provider when providing treatment or performing surgery, depending on the relationship between the care provider and the hospital. See Seneris v.

Haas, 45 Cal. 2d 811, 829, 291 P.2d 915, 926 (1955); Quintal v. Laurel Grove Hosp., 62 Cal. 2d 154, 166-68, 397 P.2d 161, 168 (1964).

Liberally construed, Plaintiff has stated a cognizable claim for medical malpractice against Dr. Hellner, Dr. Franco, P.A. Hong, P.A. Egan, Nurse Jane Doe #1, Nurse Jane Doe #2, and Mercy Medical Center. Plaintiff has alleged an employment relationship between these individual health care providers and Mercy Medical Center. Plaintiff further alleges that these health care providers performed medical services and provided treatment that deviated from the standard of care, causing him permanent injuries, pain, and disfigurement.

## IV.

## ORDER AND RECOMMENDATIONS

For the reasons explained above, IT IS HEREBY RECOMMENDED that:

1. This action proceed only on a claim for the violation of the Federal Tort Claims Act against the United States of America, and a claim for medical malpractice under state law against Dr. Hellner, Dr. Franco, P.A. Hong, P.A. Egan, Nurse Jane Doe #1, Nurse Jane Doe #2, and Mercy Medical Center; and

2. All other claims be dismissed for failure to state a cognizable claim for relief.

Furthermore, the Clerk of the Court is directed to serve these findings and recommendations by mail on Plaintiff's address of record, as well as at the following additional two addresses:

> Curtis Anderson
> # 59975-004
> Miami Federal Detention Center
> P.O. Box 019120
> Miami, FL 33101
>
> Curtis Anderson
> # 59975-004
> USP Florence - High
> P.O. BOX 7000
> Florence, CO 81226[2]

---

[2] On November 6, 2017, an order that was served on Plaintiff at his current address of record returned as "Undeliverable, no longer located at Grady County Jail." Plaintiff has not yet

11

1  These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __**November 30, 2017**__

UNITED STATES MAGISTRATE JUDGE

---

provided any updated address of record. However, Defense Counsel has filed certificates of service indicating that Plaintiff is currently located at the Miami Federal Detention Center, and is in the process of being transferred to USP Florence, in Florence, Colorado. Accordingly, in an abundance of caution, the Court is ordering service at these addresses as well as Plaintiff's address of record.